## Commonwealth v. Shaffer

*Harry Alvan Baird,* for Commonwealth.
*Charles F. Bidelspacher,* for defendant.

RHONE, J., December 8, 1938. — The charge filed against defendant in this case is the information upon which the proceeding was had and recites that "the said defendant, being the lawful husband of the affiant, wilfully deserted and separated himself from her without reasonable cause and has neglected and still neglects to maintain deponent."

Aside from the denial upon the part of respondent that he left the premises both had occupied for more than four years at 848 East Third Street, Williamsport, Pa., as a result of a fight he had with complainant at the time he left; that complainant told him he could go his way and she would go hers, and that, "She said that so often, not only once but every night, and I finally did take her at her word and left", to justify his action in leaving, he

sets up another defense, to wit, that he could not have entered into a legal or valid marriage, common-law or otherwise, at any time during the year 1926, because he then had a wife living and was not divorced from her.

Complainant in this case attempts to set up a common-law marriage and this is the first question the court will dispose of in this opinion because if this cannot be sustained the case must fall. However, the court is of the opinion that the testimony does establish a common-law marriage at the time complainant and defendant began living together in the City of Williamsport, and there is ample evidence to show they sustained this relationship for nearly 12 years thereafter.

Complainant testified that she came to Williamsport late in 1926, and that she came here as defendant's wife, "He also gave me a wedding ring before I came, I have it on my finger now" and, "I was supposed to be his wife when I came here." When asked this question: "What do you mean; a little more in detail, by (what you mean by) 'I was supposed to be his wife when I came here'?"

"A. Come here and live together as man and wife.

Q. Was there any agreement?

A. It was an agreement, he gave me a ring and introduced me to everybody as Mrs. Shaffer.

Q. Did you and Mr. Shaffer agree at or about that time you should live together as man and wife?

A. We certainly did.

Q. And he gave you a wedding ring?

A. Yes."

Complainant further testified that he introduced her to everybody as his own wife, and introduced her to his bosses at the Keeler boiler factory as Mrs. Shaffer, where she was always known as Mrs. Shaffer as a result of this introduction; that when defendant went away to work he sometimes took complainant with him and she gave the name of a hotel in Philipsburg, Pa., where he was then working, where they stayed as man and wife; that they moved into an apartment and later moved to other loca-

tions in Williamsport, the exact locations of which will be designated later on in this opinion, and this relationship continued from 1925 to 1938. The court believes the evidence of complainant. She was frank, and we believe, truthful.

Complainant offered in evidence an envelope addressed to Mrs. W. W. Shaffer, 848 East Third Street, Williamsport, Pa., postmarked Athens, Pa., February 12, 1936, which the court finds was written by defendant. When asked about this defendant testified:

"Q. I show you Commonwealth's exhibit no. 1, being an envelope and ask whether that is in your handwriting?

A. That is in print, that is not my handwriting.

Q. Did you print it?

A. Well, I might have printed that.

Q. Do you deny, Mr. Shaffer, that you ever introduced (this lady as your wife)?

A. This lady always wanted to use my name.

Q. And you permitted her to do so?

A. Well, what could I do?"

The witness, Stark, was called to the stand by defendant and after testifying that he had been at the house when they were quarreling about money affairs, the court asked this question of the witness:

"Q. What did you call this women when you addressed her?

A. Out of respect I addressed her as Mrs. Shaffer.

Q. You did call her Mrs. Shaffer?

A. Absolutely, I knew no other name to call her, I was never introduced to her.

Q. And yet you were in that home almost daily from July 1937, to sometime in May 1938, is that right?

A. Yes."

William V. Dooley, the court crier of this court, was called as a witness in this case and he was asked whether or not he had ever been introduced to complainant and he testified that possibly two or three years prior to the flood, in 1933 or 1934, when he was visiting at the home

of Mr. and Mrs. Jacob Missingman, on Mulberry Street, Williamsport, Pa., he was introduced to this lady as Mrs. Shaffer by Mr. Shaffer.

Mrs. Minnie Hauke testified that she had known the people identified as Mr. and Mrs. Shaffer between seven and eight years and that about three weeks before this trial Mr. Shaffer came to her house and "asked me to come down and have Mrs. Shaffer come to my house, he wanted to talk to her", and that she had always known her as Mrs. Shaffer.

As an example of the lack of frankness of defendant, the court quotes the following testimony, when he was interrogated by his own counsel and by the court after he denied that he took complainant to Philipsburg, Pa., where he was working. He was asked by the court:

Q. What was your status with her while you were at this town, working there at Philipsburg, how did you live at this hotel? Did you live there as man and wife?

A. No.

Q. Did you each have a separate room?

A. We didn't register as man and wife.

Q. I am asking if you both occupied a separate room up there?

A. Well no . . .

Q. But you both occupied the same room in this hotel?

A. Well, we occupied the same room about a week and I took her over to Tyrone to her sister's."

This court, under the authority conferred by law, now takes judicial notice of the fact that there is an annual publication known as Boyd's Williamsport City Directory which has been published and distributed in the City of Williamsport for many years and a copy deposited in the public library of this city, and that this book contains "the alphabetical list of names of residents and business and professional concerns" and that "it shows the name, *marital status*, occupation and address of each adult resident of Williamsport and vicinity;" that the method of indicating the marital status of women in this directory

is as follows: where a single woman's name appears, her first name is given only without the addition of any other detail, viz.: Mary B. Smith. If the woman is a widow, the name would appear (wid. James Smith). If the woman so listed is a married woman, her name would appear (Mary B.) immediately after the name of the man whose name appears in the directory.

In the years 1935, 1936, 1937, 1938, the name of Warren W. Shaffer appears in said city directory as follows: "Warren W. Shaffer (Louise M.) 848 East Third St., Williamsport, Pa.," and this is a publication to whomsoever may consult said directory that Warren W. Shaffer is a married man, that his wife is Louise M., and that the residence given is the common residence of said man and wife. For the years 1926 to 1932 inclusive, there was inserted in said city directory in each of said years, Warren W. Shaffer (Louise M.) 458 East Third Street, Williamsport, Pa." There was no publication of this city directory in the year 1933.

We now come to another defense set up by defendant: that at the time the alleged common-law marriage took place Warren W. Shaffer was a married man and had a wife in being whose name is Dora M. Shaffer, and that she resides in the City of Altoona; that he was not legally divorced from her at any time during the year 1926 and it was quite some time after that before a divorce was granted to Dora M. Shaffer.

There was offered in evidence a certified copy of decree in divorce entered in the Court of Common Pleas of Clinton County on October 29, 1926, to no. 142 April term, 1926, in which case Dora M. Shaffer was libellant and Warren W. Shaffer was respondent and the court finds as a fact that the Warren W. Shaffer mentioned in the decree in divorce is the defendant in this case.

This on its face would clearly establish that on and after October 29, 1926, defendant, Warren W. Shaffer, was free to remarry, either by common-law marriage or otherwise. However, defendant asserts that because the

costs were not paid into court until October 24, 1933, the divorce was inoperative until that date under Rule 69 of the Lycoming County C. P. Rules which provides:

"No final decree shall in any case be entered on the record by the Prothonotary until all costs are paid, unless otherwise ordered by the Court for cause shown."

The answer to this proposition is that the decree in divorce entered by the court in this case was a final decree and the court was without jurisdiction to attach any conditions thereto and that the rule of court cited is inoperative in this case so far as constituting a valid defense to this action for support and maintenance in defendant's favor.

In Barnhart's Estate, 28 Dist. R. 885, a decree in divorce was entered October 6, 1913, in which it was provided:

That the court "do sentence and decree that Charles H. Lewis be divorced and separated from the nuptial ties and bonds of matrimony heretofore contracted between him, the said Charles H. Lewis, the libellant, and the said Ella Lewis, respondent; and that thereupon all and every the duties, rights and claims . . . shall cease and determine . . . " 'This decree to be effective upon the payment of all the costs, the petitioner to pay the costs in the first instance.' "

Ella Barnhart Lewis, respondent in said divorce case, died intestate August 3, 1937, and letters of administration were granted upon her estate in the name of Ella Barnhart. The administrator filed an account which was confirmed by the orphans' court, showing balance in his hands for distribution.

Ella Barnhart Lewis left surviving her three children by a former marriage.

Lewis, the second husband, who was the libellant in the divorce case above mentioned, appeared claiming he was entitled to share in the balance of the distribution as the husband of the decedent upon the theory that the decree in divorce under its terms never became effective because the costs in the proceeding had never been paid.

The auditor disallowed the claim and distributed the fund to the children, to which order Lewis filed exceptions. Judge McPherson, who wrote the opinion in this case, states that he had been unable to find a similar case decided in any court of Pennsylvania, but did find the case of Mickle v. State (Ala. 1896), 21 So. 66, in which the exact question was raised, and upon the authority of that case and his own reasoning he decided that the provision of the decree in that case "that the decree should not be effective until all the costs had been paid" was without jurisdiction, and a nullity. It being a nullity it was never in law a part of the decree, and could not prevent the final decree in divorce from being effective to dissolve the bonds of matrimony between Charles H. Lewis and Ella Barnhart Lewis as of the date on which it was entered. The Alabama court in its opinion stated inter alia:

"Justice is not the subject of bargain and sale, and cannot be granted or decreed because the parties are or are not of ability to pay costs. Chancellors have a large discretion in the imposition of costs, and may decree that they be paid by either party, as the facts of the particular case seem to require. . . . He may require the payment of costs as a condition upon which a continuance or a rehearing be granted, and there are other exceptional cases. But when a final decree is rendered, granting relief, the costs, whichever party is decreed to pay them, must be collected by the usual processes of the court."

Under authority of these two cases this court holds that the decree in divorce in the above-recited case in which Dora M. Shaffer was libellant, and Warren W. Shaffer was respondent, became operative on October 29, 1926, the date it was signed by the court. The court, therefore, concludes as a matter of law that this defense upon the part of defendant cannot be sustained.

Without extending this opinion to undue length, the court in support of its findings of fact and its conclu-

sion of law that a common-law marriage was duly consummated between Louise M. Hardy, now Shaffer, and Warren W. Shaffer, cites the text in 18 R. C. L. 428 §57, and cases therein cited, and In re Comly's Estate, 185 Pa. 208.

## Findings of fact

From the testimony in this case the court finds the following specific facts:

1. That complainant, who was then Louise M. Hardy, and defendant, Warren W. Shaffer, in December 1926, effected a common-law marriage, which marriage was symbolized by the giving of a wedding ring to complainant by defendant, and was immediately followed by cohabitation, thereby creating a marital status which continued without interruption until August, 1938, at which time defendant, without just or reasonable cause, separated himself from complainant.

2. That complainant, Louise M. Hardy (Shaffer), and defendant, Warren W. Shaffer, were thereafter known as Mr. and Mrs. Shaffer among their friends and acquaintances in the City of Williamsport; that Shaffer introduced complainant as his wife to divers people in Williamsport; and that their names appeared in the city directory of Williamsport as man and wife while they resided at 848 East Third Street during the years 1934, 1935, 1936, 1937, and 1938, and at 458 East Third Street during the years 1926, 1927, 1928, 1929, 1930, 1931, and 1932. No directory was published in the year 1933.

3. From all the evidence this court finds as a fact that a common-law marriage was consummated by complainant Louise M. Hardy (Shaffer), and Warren W. Shaffer in the fall of 1926, which common-law marriage was immediately followed by cohabitation as man and wife, and that this relationship continued without interruption until August 1938, at which time, as a result of a fight or argument about money affairs, defendant sepa-

rated himself from his said common-law wife, Louise M. Shaffer, and has ever since wilfully neglected to support and maintain her, which in law he is bound to do.

4. That defendant's earnings for the past three years while employed at E. Keeler Company were as follows: 1936, 52 weeks, $1,972.77, average per week $37.93; 1937, 52 weeks $1,838.29, average per week $35.35; 1938, 46 weeks, $1,643.30, average per week $35.72. That from this amount should be deducted some allowance for loss of earning power by reason of the introduction of the 44-hour week law; for group life insurance, unemployment insurance, and old age pension, which would probably reduce defendant's earnings to $59.41 for two weeks, leaving his average earnings about $29.70 per week in the future, and that defendant should pay his wife, Louise M. Hardy Shaffer, for her support and maintenance the sum of $8 per week.